# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUDRIANNA B. RUSSELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-163-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Audrianna B. Russell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim for child's insurance benefits if the claimant is 18 years old or older and alleges a disability that began before attaining 22 years of age. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[1]Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was twenty-one years old at the time of the administrative hearing (Tr. 45). She completed twelfth grade while taking special education classes, and has no past relevant work (Tr. 45-46, 54). The claimant alleges that she has been unable to work since April 11, 2012, due to hearing loss and major depressive disorder (Tr. 240).[2]

**Procedural History**

On March 21, 2014, the claimant applied for child's insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 193-201). Her applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 20, 2016 (Tr. 20-33). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined

---

[2] Due to a final decision on a prior application, the ALJ found that the claimant's earliest possible onset date in this case was August 2, 2013 (Tr. 20-21).

in 20 C.F.R. §§ 404.1567(b), 416.967(b), except there could be no need for good hearing (Tr. 25-26). He found that the claimant could hear speech carried on in normal conversational voice, but should not have to communicate over the phone, and should not work in a noisy environment like a factory with loud machinery. The ALJ further found the claimant could perform simple, repetitive tasks, and could relate to supervisors and co-workers superficially, but could not work with the general public (Tr. 26). The ALJ then concluded that although the claimant had no past relevant work to which she could return, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, produce sorter and bakery racker (Tr. 32-33).

## Review

The claimant contends that the ALJ erred by failing to: (i) resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupation Titles ("DOT"), and (ii) properly analyze the opinion of consultative examiner Dr. Theresa Horton. The Court agrees that the ALJ erred in evaluating Dr. Horton's opinion, therefore the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of bilateral sensorineural hearing loss, obesity, major depressive disorder, posttraumatic stress disorder, generalized anxiety disorder, and borderline intellectual functioning (Tr. 45). The relevant medical evidence reveals that Dr. Wellie Adlaon regularly treated the claimant between September 2011 and June 2014, and his diagnoses included impulse control disorder, major depressive disorder, morbid obesity, attention deficit disorder with hyperactivity, posttraumatic stress

disorder, and bipolar disorder (Tr. 548-638). On June 23, 2014, the claimant's counselor Cassandra Cummins[3] and Dr. Adlaon prepared a Medical Source Statement ("MSS") wherein they indicated that the claimant's mental impairments included major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder (Tr. 645). They opined that the claimant had a severe impairment (as defined on their form) in her ability to work in coordination with or in proximity to others without being distracted, but was not limited in her ability to ask questions or request assistance from supervisors (Tr. 647). They also opined that the claimant was moderately impaired in her ability to understand, remember, and carry out short and simple (one or two-step) repetitive instructions or tasks; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and respond appropriately to expected changes in the work setting and routine (Tr. 646-47). Ms. Cummins and Dr. Adlaon then indicated that the claimant had a moderately severe impairment in all other mental activities they assessed, and concluded that their limitations had been applicable since December 2, 2009 (Tr. 646-48).

On June 18, 2013, Theresa Horton, Ph.D. performed a consultative mental status examination of the claimant (Tr. 475-78). Dr. Horton noted the claimant occasionally had difficulty hearing the questions, but more often had problems understanding them, thus they had to be repeated and simplified (Tr. 477). She found the claimant's recall and memory were intact, her concentration was adequate, her judgment was appropriate, and

---

[3] The record contains a letter from Ms. Cummins dated May 8, 2013, indicating that she has provided counseling services to the claimant since July 2010, as well as a letter dated October 27, 2014, indicating that the claimant had been a client since January 2012, but none of Ms. Cummins's treatment notes are contained in the record (Tr. 472, 642).

her insight was fair (Tr. 477-78). She diagnosed the claimant with generalized anxiety disorder, major depressive disorder, recurrent, mild with chronic irritability, and borderline intellectual functioning (Tr. 478). She opined that the claimant appeared capable of understanding, remembering, and managing mostly simple instructions and tasks, though likely would have difficulty doing so with adequate social and emotional adjustment into occupational settings (Tr. 478). She also opined that the claimant "likely does do better in small, familiar social settings." (Tr. 478).

On May 7, 2014, state agency psychologist Cheryl Marsiglia, Ph.D. completed a Mental RFC Assessment and found that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public (Tr. 86-88). Dr. Marsiglia explained that the claimant could perform simple tasks with routine supervision, adapt to a work situation, and relate to supervisors and peers on a superficial work basis, but could not relate to the general public (Tr. 88). Her findings were affirmed on review (Tr. 126-28).

The claimant was admitted to Valley Behavioral Health on June 19, 2015, due to depression and suicidal ideation (Tr. 650-53). She received a medication evaluation and therapy services, and was discharged as stable June 24, 2015 (Tr. 651). Thereafter, Dr. Eric Broadway treated the claimant for major depressive disorder from July 22, 2015, through November 11, 2015, the last treatment note in the record (Tr. 675-84).

In his written opinion, the ALJ summarized the claimant's testimony and most of the medical records. In discussing the opinion evidence, he assigned Dr. Horton's consultative opinion "some weight" and indicated the limitations she provided were

reflected in the claimant's RFC (Tr. 28). He rejected Dr. Adlaon's opinion and then gave significant weight to the state agency psychologist and physician opinions, but further limited the claimant to light work due to her obesity, and specified the terms of her hearing ability in light of her hearing loss (Tr. 29, 31).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ generally reviewed Dr. Horton's opinion favorably, assigned it some weight, and indicated that the limitations she imposed were reflected in the RFC (Tr. 28). The ALJ did not, however, specifically discuss Dr. Horton's findings in relation to the claimant's difficulty with adequate social and emotional adjustment into

occupational settings, and that she likely did better in small, familiar social settings. The ALJ did not, for example, explain how these limitations were accounted for in the RFC or, if they were rejected outright, why he found certain aspects of Dr. Horton's opinion persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability . . . it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others."). The Commissioner argues that these omissions were not error because Dr. Horton's findings as to the claimant's social and emotional adjustment were not functional limitations, but instead observations about work situations that would be better for the claimant. The ALJ did not, however, offer any such explanation for his failure to include the limitations in the claimant's RFC, so the Court is unpersuaded by this attempt at post-hoc rationalization. *See Haga*, 482 F.3d at 1207–08 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

The Commissioner also argues that because the ALJ included some social limitations in questions to the vocational expert at the administrative hearing, they were in fact included in the claimant's RFC despite any failure of analysis by the ALJ at step four. But this attempt to characterize the ALJ's as harmless is likewise unpersuasive. In response to the ALJ's hypothetical questions, the vocational expert identified two jobs the claimant could perform with her functional limitations: produce sorter and bakery racker (Tr. 55-

57). As to the first job, the Commissioner candidly acknowledges that the ALJ wholly failed to "ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel,* 196 F.3d 1084, 1087 (10th Cir. 1999). The Commissioner notes that the vocational expert offered an unsolicited explanation that the Commissioner feels accounts for the discrepancy, but the Court finds this explanation unsatisfactory. And as to the second job, *i. e.*, bakery racker, the claimant contends there is substantial doubt that such job exists in substantial numbers and urges a reconsideration of "the factors that should direct an ALJ's resolution of the significant number inquiry[.]" *Norris v. Barnhart,* 197 Fed. App'x. 771, 777 (10th Cir. 2006) [unpublished opinion]. Nor does the Commissioner dispute the claimant's contention in this regard. The Court therefore concludes that ALJ's failure to properly analyze Dr. Horton's opinion was not rendered harmless by the questions posed to the vocational expert.

Because the ALJ failed to properly evaluate Dr. Horton's opinion, the decision of the Commissioner is should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**